UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————x

ERNEST L. ROBINSON, III,                        :
                                                :
                            Plaintiff,          :
                                                :
            - against -                         :          **OPINION AND ORDER**
                                                :           11 Civ. 2875 (ER)
TOWN OF KENT, NEW YORK, KATHY                    :
DOHERTY, as Supervisor for the Town of          :
Kent, TIMOTHY CURTIS, as Town Attorney,         :
MICHELLE SCLAFANI, as Senior Justice            :
Court Clerk, JOSEPH CHARBONNAEAU,               :
as Special Prosecutor, and MICHAEL              :
TIERNEY, PENNY OSBOURNE,                         :
LOUIS TARTARO as Town Board Members,            :
                                                :
                            Defendants.         :

———————————————————————————x

Appearances:

Brian K. Condon
Condon & Associates, PLLC
Nanuet, New York
*Attorney for Plaintiff*

Adam I. Kleinberg
Leo Dorfman
Sokoloff Stern LLP
Westbury, NY
*Attorneys for Defendants*

Ramos, D.J.:

        Plaintiff Ernest L. Robinson, III ("Plaintiff") brings this civil rights action pursuant to 42

U.S.C. § 1983 against the Town of Kent, New York ("Town of Kent" or the "Town"), Kathy

Doherty, as Supervisor for the Town of Kent, Timothy Curtiss (sued herein as Timothy Curtis),

as Town Attorney, Michelle Sclafani, as Senior Justice Court Clerk, Joseph Charbonneau (sued

herein as Joseph Charbonnaeau), as Special Prosecutor, and Michael Tierney, Penny Osbourne,

and Louis Tartaro as Town Board Members (collectively, "Individual Defendants"), alleging violations of his First, Fifth and Fourteenth Amendment rights and state law claims for abuse of process, malicious prosecution, and intentional infliction of emotional distress.  Am. Compl. ¶¶ 78-111.

Defendants have now moved to dismiss the Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that Plaintiff has failed to state any plausible claims of entitlement to relief.  Doc. 20.  For the reasons discussed below, Defendants' motion to dismiss is GRANTED in full.

## I. Background

### A.  Factual Background

The following facts, which are taken from the Amended Complaint, are assumed to be true for the purposes of the instant motion.[1]

Beginning in or around 2008, Plaintiff and his brother, Town employee Stanley Robinson, were involved in a dispute over their deceased mother's estate.  Am. Compl. ¶ 12. For reasons that are not specified in the Amended Complaint, Plaintiff obtained two Orders of Protection against his brother.  *Id.* ¶ 16.  On April 25, 2008, Plaintiff sent a letter to Defendant Kathy Doherty, the Town Supervisor, to advise her that his brother was violating the Orders of Protection during work hours and while using a Town vehicle, by trespassing on Plaintiff's property and storing Town property on the premises.  *Id.* ¶¶ 17-18.  Plaintiff alleges, on information and belief, that his brother was never investigated for the alleged violations of the Orders of Protection.  *Id.*  ¶ 20.

---

[1] As is required on a motion pursuant to Rule 12(b)(6), the factual allegations in the Amended Complaint, though disputed by Defendants, are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of Plaintiff.  *Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 108 (2d Cir. 2010).  The facts recited above do not constitute findings of fact by this Court.

After Plaintiff sent the letter to Doherty, his brother charged him with harassment in the Justice Court of the Town of Kent ("Town Justice Court"). *Id.* ¶ 19. On June 26, 2008, Plaintiff appeared in the Town Justice Court *pro se* in response to a summons and was directed to return for trial on July 31, 2008. *Id.* ¶¶ 25-26. On July 31, 2008, Plaintiff appeared in Town Justice Court as required, this time with an attorney, George T. Delaney, Esq. *Id.* ¶ 27. At that time, Timothy Curtiss, the Town Attorney and a defendant herein, offered to settle the matter by granting Plaintiff an adjournment in contemplation of dismissal, which he declined. *Id.* ¶ 29. The charges against Plaintiff were then dismissed by Judge Peter Collins, because the complainant, Plaintiff's brother, was not present. *Id.* ¶¶ 30-33. Michelle Sclafani, the Senior Justice Court Clerk and a defendant herein, was not present in the courtroom at the time of Judge Collins' ruling, but before leaving the Town Justice Court on that day Delaney informed her that the case against Plaintiff had been dismissed. *Id.* ¶ 34. However, in or around November 2008, Plaintiff learned that the case against him had been restored to the Town Justice Court's calendar with a trial date of May 7, 2009. *Id.* ¶¶ 37-38.

Plaintiff believes that the charges against him were reinstated in order to punish him for publicly criticizing Doherty, the Town's political leader, and for informing people in the community about the Town's failure to investigate his complaints about his brother. *Id.* ¶¶ 21, 35-37, 69. Plaintiff also alleges that "the Town and its employees undertook a concerted effort to chill [his] speech and silence him" in order to stop him from criticizing Doherty. *Id.* ¶¶ 21-23. In this context, Plaintiff claims that he was treated differently from Town employees, such as his brother, and from supporters of Doherty. *Id.* ¶ 24.

On May 6, 2009, Delaney filed a motion for recusal because of Judge Collins' political relationships with numerous witnesses that Plaintiff had subpoenaed for trial, and due to the

circumstances surrounding the unexplained reinstatement of the charges against Plaintiff. *Id.* ¶¶ 39, 41-43. Delaney also alleged that Curtiss and Doherty had tampered with Plaintiff's witnesses, including several members of the Town Board subpoenaed by Plaintiff (who are not identified anywhere in the Amended Complaint), by advising them not to appear for trial. *Id.* ¶¶ 44-46. Judge Collins denied Plaintiff's motion.[2] *Id.* ¶ 47. Delaney also requested that the charges against Plaintiff be dismissed based on the prior dismissal and the lack of probable cause for either the initial action or the reinstatement of the charges against Plaintiff. *Id.* ¶¶ 49-50, 68. In response, Curtiss said that he would re-charge Plaintiff if Judge Collins dismissed the case. *Id.* ¶ 52. Therefore, Delaney withdrew the motion to dismiss. *Id.* ¶ 54. Plaintiff was arraigned and released on his own recognizance after entering a plea of not guilty, and his trial was rescheduled for May 28, 2009. *Id.* ¶¶ 51, 55.

On May 28, 2009, Judge Collins informed the parties that the daughter of one of the potential witnesses had previously been employed by the Court. *Id.* ¶¶ 56-57. Based on this information, Delaney renewed his motion for recusal, which Judge Collins granted. *Id.* ¶ 58.

In or around September 2009, Plaintiff's case was returned to the Town Justice Court. *Id.* ¶ 60. The Town Board subsequently appointed Joseph Charbonneau as a special prosecutor. *Id.* ¶ 61. Plaintiff alleges that Charbonneau was appointed by the same Town Board members who had been subpoenaed by Delaney to testify at trial. *Id.* ¶ 62. As previously noted, these Town Board members are not identified anywhere in the Amended Complaint. Plaintiff claims that the Town Board did not have the authority to appoint a special prosecutor, and thus Charbonneau did not have the authority to prosecute him. *Id.* ¶¶ 40, 48, 61-64.

---

[2] Although Plaintiff alleges that Delaney also requested that "a 'proper' special prosecutor (not Mr. Charbonneau) be appointed because of the obvious conflicts of interest" as part of the proceedings in May 2009, Am. Compl. ¶ 39, and that Collins denied Plaintiff's request for Charbonneau's removal at that time, *id.* ¶ 47, this assertion is inconsistent with Plaintiff's subsequent allegations that Charbonneau was appointed by the Town Board at some point after September 2009. *Id.* ¶¶ 60-61.

Plaintiff's case was subsequently transferred to the Town Justice Court of the Village of Brewster ("Brewster Justice Court").  *Id.* ¶ 65.  In connection with the transfer, Delaney ordered transcripts of the proceedings that had been held in the Town Justice Court, and received transcripts for June 26, 2008, May 7, 2009 and May 28, 2009.  *Id.* ¶¶ 70-71.  Plaintiff alleges that the transcript from June 26, 2008 was created after-the-fact by Sclafani to falsely indicate that Delaney had appeared on Plaintiff's behalf.  *Id.* ¶¶ 72-73.  Plaintiff claims that the proceedings set forth in the June 26, 2008 transcript never occurred, and alleges that the transcript was created to avoid dismissal of the charges against him.  *Id.* ¶¶ 72, 75.  Delaney filed a motion to dismiss the charges against Plaintiff in the Brewster Justice Court, and the motion was granted.  *Id.* ¶¶ 66-67.  The case in the Brewster Justice Court was thus resolved in Plaintiff's favor.  *Id.* ¶ 67.

Plaintiff claims that Defendants acted with actual malice in all of the foregoing actions against him, thereby violating his constitutional rights.  *Id.* ¶¶ 76-77.

## B. Procedural History

Plaintiff filed the original complaint in this action on April 28, 2011 against the above-named defendants and Judge Collins, as Kent Town Justice, alleging violations of his Fifth and Fourteenth Amendment rights, violations of his rights under Article I, § 6 and § 11 of the New York State Constitution, and asserting a state law claim for malicious prosecution.  Doc. 1 ("Compl.").  Plaintiff's federal constitutional claims alleged violations of the Double Jeopardy and Due Process Clauses of the Fifth Amendment, and of the Due Process and Equal Protection Clauses of the Fourteenth Amendment.  Compl. ¶¶ 64-75.

At Defendants' request, the Honorable Cathy Seibel, to whom this case was then assigned, held a pre-motion conference on September 23, 2011 regarding Defendants'

anticipated motion to dismiss pursuant to Rule 12(b)(6).  At the conference, Judge Seibel granted Plaintiff leave to file an amended complaint, and also set a briefing schedule for the instant motion.

Plaintiff filed the Amended Complaint on November 14, 2011.  Doc. 17.  Though largely the same as the original complaint, the Amended Complaint contains an apparent First Amendment retaliation claim[3] and two new state law claims, and omits the New York State Constitution and Fifth Amendment Double Jeopardy Clause claims.  Additionally, Judge Collins is not named as a Defendant in the Amended Complaint.  Pursuant to the briefing schedule set by Judge Seibel, Defendants filed a motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6) on January 12, 2012.  Doc. 20.

## C.  Extrinsic Evidence

In support of their motion to dismiss, Defense counsel submitted the affidavit of Michelle Sclafani identifying various exhibits as true and correct copies of court documents and Town Board correspondence relating to the Town Justice Court proceedings against Plaintiff.  Decl. of Adam I. Kleinberg Supp. Defs.' Mot. Dismiss Pl.'s Am. Compl., Ex. B.  Defendants urge the Court to take judicial notice of each exhibit and to consider the documents contained therein in deciding the instant motion.  Mem. Law Supp. Defs.' Mot. Dismiss Pl.'s Am. Compl. ("Defs.' Mem.") 3-4 n.2.

---

[3] The Second Cause of Action of the Amended Complaint asserts, *inter alia*, a claim under the First Amendment:

> Defendants' actions deprived Plaintiff of his right to equal protection, as secured by the First Amendment [sic], by among other things, causing his freedom of speech and exercising his First Amendment rights, as he was voicing his displeasure and concern over the Town's failure to take action as to the complaints which the Plaintiff made to the Town against his brother.  The Defendants re-instituted charges against the Plaintiff in order to silence him.

Am. Compl. ¶ 84.  The pleading is not a model of clarity.  However, based on Plaintiff's other allegations and the arguments contained in the parties' submissions in connection with this motion, the Court has interpreted this portion of the Second Cause of Action as alleging a First Amendment retaliation claim.

In opposing Defendants' motion, Plaintiff's counsel also submitted extrinsic materials, including an affidavit of a former Justice of the Town Justice Court, Doc. 26, and the Declaration of Delaney, which contains a summary of the facts as alleged in the Amended Complaint and identifies a number of documents, attached as exhibits, that are related to the Town Justice Court proceedings.  Doc. 27.  Although Plaintiff relies on both the affidavit and declaration extensively in his Memorandum of Law, he does not address the propriety of considering the materials in connection with a motion to dismiss under Rule 12(b)(6).  Defendants have asserted that these materials cannot be used by Plaintiff to avoid dismissal because they are not referenced in the Amended Complaint.  Reply Mem. Law Further Supp. of Defs.' Mot. Dismiss Pl.'s Am. Compl. ("Defs.' Reply Mem.") 2.

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court generally must confine itself to the four corners of the complaint and look only to the allegations contained therein.  *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007).  If, on a motion to dismiss, matters outside the pleadings are presented and not excluded by the court, the motion should be treated as one for summary judgment.  Fed. R. Civ. P. 12(d).  Since the purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the pleadings without considering the substantive merits of the case, *Global Network Commc'ns v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006), the Court has not considered any of the affidavits or exhibits submitted by either party in ruling on the instant motion.[4]

---

[4] The extrinsic evidence that Plaintiff submitted is not appropriate for the Court to consider in ruling on a motion to dismiss pursuant to Rule 12(b)(6), because the exhibits are neither mentioned nor relied upon in the Amended Complaint.  Any analysis of such materials—which Plaintiff relies on for the truth of the matters asserted therein— is also not appropriate under the judicial notice exception to the requirement that a district court convert a motion to dismiss into one for summary judgment when matters outside the pleadings are presented to and not excluded by the court.  *Global Network Commc'ns*, 458 F.3d at 156-57.  Since the Court finds that Defendants are entitled to dismissal under Rule 12(b)(6) based on the insufficiency of the allegations contained in the Amended Complaint, the Court also has not considered the extrinsic materials submitted by Defendants.  In excluding these documents, the

## II. Legal Standard for Motion to Dismiss

On a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 108 (2d Cir. 2010). However, this requirement does not apply to legal conclusions, bare assertions or conclusory allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In order to satisfy the pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

Though a plaintiff may plead facts alleged upon information and belief, "where the belief is based on factual information that makes the inference of culpability plausible," *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 120 (2d Cir. 2010), such allegations must be "'accompanied by a statement of the facts upon which the belief is founded.'" *Navarra v. Marlborough Gallery, Inc.*, 820 F. Supp. 2d 477, 485 (S.D.N.Y. 2011) (quoting *Prince v. Madison Square Garden,* 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006)); *see also Williams v. Calderoni*, No. 11 Civ. 3020(CM), 2012 WL 691832, at *7-8 (S.D.N.Y. Mar. 1, 2012) (finding

---

Court expresses no opinion as to which, if any, of the documents submitted by Defendants could be properly considered in ruling on a motion to dismiss pursuant to Rule 12(b)(6).

pleadings on information and belief insufficient where plaintiff pointed to no information that

would render his statements anything more than speculative claims or conclusory assertions).  A

complaint that "tenders naked assertions devoid of further factual enhancement" will not survive

a motion to dismiss under Rule 12(b)(6).  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at

557) (internal quotation marks omitted) (brackets omitted).

### III. Section 1983 Claims

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that:  (1)

defendants were state actors or were acting under color of state law at the time of the alleged

wrongful action; and (2) the action deprived plaintiff of a right secured by the Constitution or

federal law.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  "Section 1983 is

only a grant of a right of action; the substantive right giving rise to the action must come from

another source."  *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (citing *Adickes

v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970)).  Thus, a civil rights action brought under § 1983

will stand only insofar as the plaintiff can prove an actual violation of his rights under the

Constitution or federal law.  *Id.*

#### A.  Claims against the Individual Defendants

As an initial matter, the Amended Complaint is devoid of *any* reference to *any* of the

Town Board Members named as Defendants in the caption of the Amended Complaint.  Not only

did Plaintiff fail to define the Town Board Members, either collectively or individually, in the

"Parties" section of the pleading, Am. Compl, ¶¶ 7-11, he also failed to attribute any specific

actions to any of the Town Board Members anywhere in the body of the Amended Complaint.

While Plaintiff alleged that the "Town Board" and "the same members of the Town Board that

were subpoenaed by [Plaintiff] to testify at trial" appointed Charbonneau as special prosecutor,

*id.* ¶¶ 61-63, he did not identify those Town Board Members by name anywhere in the pleadings. Plaintiff's failure to mention the Town Board Member Defendants anywhere in the Amended Complaint provides an independent, sufficient basis for dismissing any and all claims against Michael Tierney, Penny Osbourne and Louis Tartaro, sued herein "as Town Board Members," pursuant to Rule 12(b)(6).

Plaintiff has sued the Individual Defendants in their respective roles as Town officials, and not in their individual or personal capacities.[5]  To succeed on a claim against a municipal officer in his or her official capacity, a plaintiff must show that a municipal custom, policy or practice was the "moving force" behind the alleged constitutional violations.  *Kentucky v. Graham,* 473 U.S. 159, 166 (1985).  Thus, Plaintiff's claims against the Individual Defendants are duplicative of the municipal liability claims brought against the Town of Kent.  *Graham,* 473 U.S. at 165 ("[o]fficial capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)).  "Based upon the understanding that it is duplicative to name both a government entity and the entity's employees in their official capacity, courts have routinely dismissed corresponding claims against individuals named in

---

[5] In opposing the instant motion, Plaintiff cites to case law for the proposition that individuals can be held liable for damages in their individual capacities under § 1983 even when the conduct in question is related to their official roles, and claims that "Plaintiff has sufficiently pled that Defendants were personally involved in the deprivation of his Constitutional rights."  Pl.'s Mem. Law Opp. Defs.' Mot. Dismiss ("Pl.'s Mem.") 12.  However, this assertion is included as part of Plaintiff's arguments for why his "official capacity claims" should not be dismissed. *Id.* at 11-12.  In determining whether a plaintiff has sued an individual defendant "in her personal capacity, official capacity, or both, we first look to the complaints and the 'course of proceedings.'" *Kentucky v. Graham,* 473 U.S. 159, 167 n.14 (1985) (quoting *Brandon v. Holt,* 469 U.S. 464, 469 (1985)).  Here, in both his original complaint and the Amended Complaint, Plaintiff identified each Individual Defendant solely by their respective roles as Town officials.  Am. Compl. ¶¶ 7-10; Compl. ¶¶ 7-11.  There is also no indication in the body of the Amended Complaint that Plaintiff intended to sue the Individual Defendants in both their official and individual capacities; Plaintiff mentioned the Individual Defendants' personal involvement in the alleged constitutional violations and potential liability in their individual capacities for the first time in opposing Defendants' motion to dismiss.  Thus, the Court concludes that Plaintiff has only sued the Individual Defendants in their official capacities.  For this reason, the Court is not required, and accordingly declines to, address Defendants' arguments regarding absolute prosecutorial immunity and qualified immunity for any individual capacity claims.  Defs.' Mem 8-10, 24; Defs.' Reply Mem. 3-5.

their official capacity as redundant and an inefficient use of judicial resources." *Escobar v. City of New York,* No. 1:05-cv-3030-ENV-CLP, 2007 WL 1827414, at *3 (E.D.N.Y. June 24, 2007) (internal quotation marks omitted) (quoting *Robinson v. Dist. of Columbia,* 403 F. Supp. 2d 39, 49 (D.D.C. 2005)); *see also, e.g.*, *Schreiber v. East Ramapo Cent. Sch. Dist.* 700 F. Supp. 2d 529, 562 n.18 (S.D.N.Y. 2010) (dismissing claim against school superintendent in his official capacity as duplicative of the claims against the school district) (citing *Graham*, 473 U.S. 165-66).  Therefore, since the Town of Kent is also named as a Defendant in the Amended Complaint, and there is no § 1983 claim asserted against the Individual Defendants in their personal capacities, Plaintiff's § 1983 claims against the Individual Defendants are dismissed.

### B.  Municipal Liability ("*Monell* Claim")

A municipality cannot be held liable under § 1983 solely on a theory of *respondeat superior*.  *Monell*, 436 U.S. at 691.  A § 1983 claim can only be brought against a municipality if the action that is alleged to be unconstitutional was the result of an official policy or custom.  *Id.* at 690-91.  Thus, a plaintiff must allege that such a municipal policy or custom is responsible for his injury.  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997); *see also Connick v. Thompson*, --- U.S. ----, 131 S. Ct. 1350, 1360 (2011) ("A municipality or other local government may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell*, 436 U.S. at 692)).

The Second Circuit has established a two prong test for § 1983 claims brought against a municipality.  First, the plaintiff must prove "'the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving [official].'"  *Johnson v. City of New York*, No. 06 CV 09426, 2011

WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (quoting *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)).  Second, the plaintiff must establish a causal connection between the policy or custom and the alleged deprivation of his constitutional rights.  *Id.*

   To satisfy the first prong of the test on a motion to dismiss, a plaintiff must allege the existence of:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials, or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (internal citations and quotation marks omitted); *see also Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (quoting *Moray* and updating citations to cases).  Plaintiff has failed to assert any of the requisite bases to satisfy the first prong of a *Monell* claim under the Second Circuit's municipal liability test.

   First, Plaintiff has never identified, not even on information and belief, any specific policy or custom officially endorsed by the Town of Kent that he claims is responsible for the alleged deprivations of his constitutional rights.  *Moray*, 924 F. Supp. at 12.  In fact, Plaintiff does not allege that the Town had *any* policies or customs relating to his purported injuries.  In the Amended Complaint, he merely describes his alleged experiences relating to the Town Justice Court proceedings against him, and claims that Defendants' actions violated his constitutional rights.  This is simply not enough.

   Second, even if Plaintiff had adequately alleged conduct by Defendants that violated his constitutional rights—which he has not—that alone would be insufficient to trigger municipal

liability.  *Moray*, 924 F. Supp. at 12 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737

(1989)).   Only municipal officials who have "final policymaking authority" with respect to the

activities that allegedly violated a plaintiff's constitutional rights "may by their actions subject

the government to § 1983 liability."  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988)

(plurality opinion); *see also Birmingham v. Ogden*, 70 F. Supp. 2d 353, 374 (S.D.N.Y. 1999)

("[T]he decisionmaker must be responsible for establishing *final government policy* respecting

the particular activity [giving rise to Plaintiff's claims] before the municipality can be liable.")

(citing *Pembaur v. City of Cincinnati*, 475 U.S. 479, 481 (1986)).  Plaintiff does not allege that

*any* of the Individual Defendants are final policymakers for the Town of Kent, and the Amended

Complaint does not contain any factual allegations from which such authority could be

assumed.[6]  Therefore, Plaintiff has not shown municipal liability based on any Individual

Defendants' conduct.  *Jeffes v. Barnes*, 208 F.3d 49, 57-58 (2d Cir. 2000) ("Where a plaintiff

relies not on formally declared or ratified policy, but rather on the theory that the conduct of a

given official represents official policy, it is incumbent on the plaintiff to establish that element

as a matter of [state] law.")

        Third, the Amended Complaint does not contain any factual allegations establishing a

consistent and widespread practice of misconduct by Defendants, nor is there any allegation that

policy-making officials had constructive knowledge of any "practice" of misconduct.  Plaintiff

does not allege that any of the Individual Defendants' alleged wrongful actions were repeated, or

that any of the Individual Defendants were responsible for similar conduct in the past.  *Johnson*,

---

[6] While Doherty's title ("Supervisor for the Town of Kent") suggests that she may be a final policymaker for the
municipality, at least with respect to particular activities, there is no allegation in the Amended Complaint that
Doherty had final policymaking authority with respect to the prosecutorial decisions of the Town Attorney, the
appointment of special prosecutors by the Town Board, or the creation of transcripts for Town Justice Court
proceedings.  Moreover, the only allegation of conduct by Doherty in the Amended Complaint is that she advised
certain unidentified witnesses not to appear at Plaintiff's trial.  Am. Compl. ¶ 46.  Even accepting this allegation as
true, it is an insufficient basis for establishing the existence of a municipal policy or custom, or for holding the Town
liable under § 1983 based solely on Doherty's conduct.

2011 WL 666161, at *4.  In fact, Plaintiff's allegation that he was treated differently from others, such as Town employees and supporters of Doherty, Am. Compl. ¶ 24, indicates that Defendants' alleged conduct was neither widespread nor consistent.

Finally, Plaintiff does not allege any failure to train or supervise, let alone the deliberate indifference to the constitutional rights of citizens that a plaintiff must show before a municipality will be held liable on the basis of such a failure.  *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007).  Therefore, he has failed to satisfy the first prong of the municipal liability test.

Even assuming, *arguendo*, that Plaintiff had pled sufficient facts to establish the existence of a policy or custom relating to the Defendants' particular actions, the Amended Complaint is devoid of factual allegations plausibly suggesting any affirmative link between a policy or custom and the alleged constitutional violations.  *See Johnson*, 2011 WL 666161, at *4 ("Plaintiff has pled no facts to demonstrate that some unidentified policy or custom bears a causal link to the alleged constitutional violations-let alone that the policy or custom was the 'moving force' behind the violations.") (citing *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823 n.8 (1985)).  Therefore, Plaintiff's § 1983 claims against the Town of Kent are also dismissed.[7]

---

[7] Furthermore, Plaintiff has failed to adequately allege any of the underlying constitutional violations.  His First Amendment retaliation claims fails because he has not alleged that his free speech rights were actually chilled by Defendants' conduct.  *Rathburn v. DiLorenzo*, 438 Fed. App'x 48, 49-50 (2d Cir. 2011) (affirming dismissal of First Amendment retaliation claim where plaintiff only alleged that defendants intended to chill his speech and that a reasonably prudent person of normal will would have had his speech chilled by defendants).  The Amended Complaint also contains no allegations to support an equal protection claim.  *Caracciola v. City of New York,* No. 95 CIV. 3896 CSH, 1999 WL 144481, at * 6 (S.D.N.Y. Mar. 17, 1999) (holding that plaintiffs' equal protection claims were "nothing short of frivolous" where they failed to allege that they were members of a protected group, and also "fail[ed] to relate instances where other persons similarly situated were treated differently, or specific instances that demonstrate plaintiffs were singled out for unlawful treatment.").  Plaintiff cannot state any claims under the Fifth Amendment because the Amended Complaint does not allege any deprivation of his rights by federal government actors.  *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 467 (S.D.N.Y. 2009).  Plaintiff has also failed to allege a

**IV. Remaining State Law Claims**

Under 28 U.S.C. § 1367(c)(3), the Court may decline to exercise jurisdiction over any non-federal claims over which it could have supplemental jurisdiction if the Court has dismissed all of the claims over which it has original jurisdiction.  Subject matter jurisdiction in the instant action is based on federal question jurisdiction, 28 U.S.C. § 1331, and the jurisdictional counterpart to § 1983 for claims alleging a deprivation of "equal rights."  28 U.S.C. § 1343(3). Having dismissed all of Plaintiff's federal claims under Rule 12(b)(6), it would be inappropriate to adjudicate his state law claims.  Therefore, all non-federal claims in the Amended Complaint are also hereby dismissed.  *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.").

**V. Attorney's Fees**

Defendants have also moved for attorney's fees pursuant to 42 U.S.C. § 1988(b) on the ground that it was unreasonable for Plaintiff to initiate and proceed with this action in light of the extrinsic evidence belying one of Plaintiff's key allegations and the pre-motion conference before Judge Seibel.[8]  Defs.' Mem. 25.

A prevailing defendant in a § 1983 case may recover attorney's fees only where the plaintiff's underlying claim was "'frivolous, unreasonable  or groundless, or . . .  the plaintiff continued to litigate after it clearly became so.'"  *Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir. 1994) (quoting *Oliveri v. Thompson,* 803 F.2d 1265, 1272 (2d Cir. 1986)).  A claim is frivolous

---

procedural due process claim under the Fourteenth Amendment, because the charges against him were dismissed before trial.  *Id.* at 468-72 (collecting cases holding that a defendant who is acquitted cannot state a procedural due process claim because there is no constitutionally cognizable deprivation in the absence of a conviction).  Therefore, even if Plaintiff had otherwise adequately alleged a *Monell* claim, dismissal of his § 1983 claims would still be appropriate under Rule 12(b)(6).

[8] Defendants state that Judge Seibel "cautioned plaintiff at the pre-motion conference to carefully examine the Complaint and the legal positions asserted in defendants' pre-motion letter."  Defs.' Reply Mem. 2 n.1

when it lacks an arguable basis in either law or fact. *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004). "Though a showing that the plaintiff acted in bad faith will further support an award under [42 U.S.C.] section 1988, the determination generally turns on whether the claim itself is clearly meritless." *Rounseville* 13 F.3d at 632; *see also Colombrito v. Kelly*, 764 F.2d 122, 129 (2d Cir. 1985) (bad faith on the part of plaintiff is not a prerequisite to award of attorney's fees).

The Second Circuit has instructed that it should be rare for a prevailing defendant in a § 1983 case to be awarded attorney's fees. *Sista v. CDC Ixis North Am., Inc.*, 445 F.3d 161, 178 (2d Cir. 2006); *see also Rounseville* 13 F.3d at 631 ("Concerned about the potential chilling effect on § 1983 plaintiffs—who are the chosen instrument of Congress to vindicate a policy of the highest national priority—we are hesitant to award attorney's fees to victorious defendants in § 1983 actions.") (internal quotation marks omitted). Therefore, given the early stage of the instant proceedings, the Court's decision not to consider the extrinsic evidence submitted by the parties, and because the pre-motion conference relied on by Defendants was not before this Court, Defendants' request to submit a fee application for an award of attorney's fees is denied.

## VI. Conclusion

For the reasons set forth above, Defendants' motion to dismiss the Amended Complaint in its entirety is GRANTED. This action is dismissed with prejudice. The Clerk of the Court is respectfully directed to close this case.

It is SO ORDERED.

Dated:   July 24, 2012
         White Plains, New York

Edgardo Ramos, U.S.D.J.